# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JEWEL MARY HARRELSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 20-0324-WS-C |
| | ) |
| SAM'S WEST, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the motion of the remaining defendants for summary judgment. (Doc. 58). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 58, 60, 61), and the motion is ripe for resolution. After careful consideration, the Court concludes the motion is due to be granted in part and denied in part.

## BACKGROUND

According to the complaint, (Doc. 1-2), the plaintiff fell in a Sam's Club parking lot, resulting in personal injuries. The complaint alleges the defendants were negligent (Count One) and wanton (Count Two) in numerous respects and that their negligence and/or wantonness combined and concurred to proximately cause the plaintiff's injuries (Count Three).

The complaint names seven defendants. Four of them were dismissed with prejudice by agreement. (Docs. 33, 34). The remaining defendants include the owner of the parking lot ("Trust") and the entity that maintained the parking lot ("Brixmor"). (Doc. 58 at 2; Doc. 60 at 2). The relationship of the final defendant ("East") to this litigation is not clearly set forth in the parties' submissions.

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; accord *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); accord *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick*, 2 F.3d at 1116; accord *Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving

party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). "Therefore, the [non-movant's] version of the facts (to the extent supported by the record) controls, though that version can be supplemented by additional material cited by the [movants] and not in tension with the [non-movant's] version." *Rachel v. City of Mobile*, 112 F. Supp. 3d 1263, 1274 (S.D. Ala. 2015), *aff'd*, 633 Fed. Appx. 784 (11th Cir. 2016).

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *accord Gennusa v. Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014). The Court accordingly limits its review to those arguments the parties have expressly advanced.

**I. Negligence.**

The defendants raise four arguments in support of their motion for summary judgment as to the plaintiff's negligence claim: (1) the imperfection in the parking lot where the plaintiff fell is not a "defect"; (2) the defendants' knowledge of the danger was not superior to that of the plaintiff; (3) the plaintiff was contributorily negligent; and (4) the plaintiff assumed the risk. The Court considers these arguments in turn.

### A. Defect.

In a premises liability action, the plaintiff "must prove that her fall resulted from a defect or instrumentality located on the premises." *Logan v. Winn-Dixie, Inc.*, 584 So. 2d 83, 84 (Ala. 1992); *accord Burlington Coat Factory v. Butler*, 156 So. 3d 963, 970 (Ala. Civ. App. 2014). The defendant argues that what constitutes a defect depends on "'what type of service the user would have a right to expect.'" *Shaw v. City of Lipscomb*, 380 So. 2d 812, 814 (Ala. 1980) (quoting *Byrnes v. National Casualty Co.*, 45 So. 2d 408, 410 (La. Ct. App. 1950)). In *Shaw*, the presence of twigs and sweet gum balls on the grass beneath some sweet gum trees in a city park constituted "a natural and normal condition," not a defect. 380 So. 2d at 815. In *Byrnes*, a patron traversing a parking lot surfaced with clam shells had no right to expect the absence of indentations and depressions. 45 So. 2d at 410-11.

According to the plaintiff, she lost her balance and fell when she stepped into a discontinuity in the asphalt pavement of the parking lot, which she described as "like a hole." (Doc. 60-2 at 4). Photographs introduced by the defendants reveal an area immediately adjacent to the curb where the asphalt (or most recent layer of asphalt) stops two to three inches from the curb, leaving a gap or depression of a similarly dark hue, extending for about two linear feet and approximately as deep as a dime or penny's diameter. (Doc. 58-4). According to the defendants, this kind of uneven surface "is a normal condition in a parking lot." (Doc. 58 at 11). For this proposition, the defendants rely on deposition testimony from their employees and allies. A Sam's Club associate testified that "the pavement in every parking lot looks like that … in that close proximity to the curb." (Doc. 58 at 6; Doc. 58-5 at 7). The sweeping and landscaping contractor

for the parking lot testified he probably would not report uneven pavement as a hazard because "we just see so much of it."  (Doc. 58 at 8; Doc. 58-11 at 7).[1]

      The defendants' argument fails both legally and factually.  Legally, they identify no case employing their "normal condition" argument to a paved parking lot.  *Shaw* involved natural droppings from trees in a natural setting, and the Alabama Supreme Court apparently has extended *Shaw* only to other natural droppings in natural settings – not to commercial establishments.[2]  *Byrnes* involved a clam shell parking lot in 1940's Louisiana, not a paved parking lot in 2018 Alabama.  Nor did *Shaw* – which involved only natural hazards – purport to approve a rule under which manmade dangers cease to be actionable defects if so many landowners create or tolerate them that they become "normal."

      Factually, in order to show that gaps between pavement and curb, with the gaps the same color as the pavement, are the norm in parking lot construction, the defendants offer only the testimony of two non-expert witnesses – one a sales associate with absolutely no identified experience in the field and the other a maintenance service owner who may have seen imperfections in other parking lots he services but who has not claimed to have knowledge of the condition of parking

---

[1] The testimony of three other witnesses does not support the defendants' position.  Brixmor's corporate representative testified only that some unidentified "that" is "not anything out of the normal." (Doc. 58 at 8; Doc. 58-1 at 5).  Brixmor's senior property manager testified that some unidentified "this" is "normal condition of the parking lot" and that "the parking lot looks normal to me from the pictures that you're showing me."  (Doc. 58 at 8; Doc. 58-10 at 4).  This deponent, however, believed the pictures she was reviewing showed a perfectly smooth surface, (*id*. at 3), and she agreed that a pothole would not be normal.  (*Id*. at 4).  Another Sam's Club associate testified that "[i]t looked like any other normal parking lot." (Doc. 58 at 8; Doc. 58-12 at 3).  Because the defendants did not submit the question to which the deponent responded, her answer is of no evidentiary value.  In any event, this deponent as well based her testimony on her belief that there was no unevenness in the pavement where the plaintiff fell.  (*Id*.).

[2] *See Richards v. Henderson*, 589 So. 2d 709, 710 (Ala. 1991) (falling pecan limbs); *Howell v. Cook*, 576 So. 2d 227, 229 (Ala. 1991) (fallen peaches under a peach tree).

lots generally.  Certainly the defendants have identified no basis on which jurors could be compelled to disregard their own vast experience with parking lots and blindly accept the *ipse dixit* of two lay witnesses that parking lots normally contain the hazard at issue here.³

In their reply brief, the defendants trot out a new argument.  They identify evidence that they believe "shifts the burden to Plaintiff to establish a defect." (Doc. 61 at 7-9).  As the Court has ruled countless times, "[d]istrict courts, including this one, ordinarily do not consider arguments raised for the first time on reply …." *McClain-Leazure v. Colvin*, 2017 WL 3034331 at *3 (S.D. Ala. 2017). The defendants having offered no reason to stray from this rule, the Court adheres to it, and the defendants' new argument is rejected on this procedural ground.

Even had the defendants timely raised their tardy argument, it would fail. The Court assumes for present purposes that the plaintiff at trial must prove the existence of a defect.⁴  On motion for summary judgment, however, the plaintiff need do nothing at all until and unless the defendants first satisfy their initial burden to show the absence of a genuine issue of material fact regarding the existence of a defect.  Because the defendants do not point to materials in the file demonstrating that the plaintiff cannot produce evidence of a defect, they must

---

³ The defendants stress that, just as the *Shaw* plaintiff expected to find sweetgum balls under sweetgum trees and yet failed to look at the ground as she walked, 380 So. 2d at 815, the plaintiff here expected to encounter flaws in the parking lot and yet was looking elsewhere when she fell. (Doc. 58 at 11-12).  To the uncertain extent the defendants suggest that whether a condition is a defect depends on the knowledge and conduct of the particular invitee, the Court rejects the suggestion.  Such a rule would mean that the same condition could be simultaneously a defect with respect to one invitee and not a defect with respect to the person walking beside him.  Nothing in *Shaw* – which did not tie these facts to its defect analysis, 380 So. 2d at 815 – supports such an odd rule.

⁴ *See Miller ex rel. Miller v. Liberty Park Joint Venture, LLC*, 84 So. 3d 88, 93 (Ala. Civ. App. 2011) (citing cases "support[ing] the contention that a plaintiff in a premises-liability action must present evidence that the condition of which it complains is defective").

"put on evidence affirmatively negating" the existence of a defect. *Fitzpatrick*, 2 F.3d at 1116.

The defendants first question whether the area where the plaintiff fell was really uneven. (Doc. 61 at 8-9). Since the plaintiff pegs the dangerousness of the area to its unevenness, negation of any unevenness presumably would negate a defect. Certain defense witnesses deny that the area was uneven,[5] and the Court assumes for present purposes that this evidence would carry the defendants' initial burden on motion for summary judgment. The plaintiff and her husband, however, both testified that the area was uneven, and the photographic evidence supports their testimony. (Doc. 58-4; Doc. 60-2 at 4; Doc. 60-5 at 3). There is thus a genuine issue of fact as to whether the area where the plaintiff fell was or was not uneven.

The defendants next offer the testimony of three Sam's Club employees for the proposition that, after the plaintiff's fall, they inspected the area and "did not find a hazardous condition." (Doc. 61 at 9). The defendants fail to address how a conclusory lay opinion that a condition is not hazardous could even be admissible. In any event, their evidence is far less than advertised and does not negate a defect. One witness merely denied there was any unevenness, (Doc. 58-12 at 3), which is a non-starter given the plaintiff's evidence to the contrary. A second witness stated only that he couldn't tell what the plaintiff "tripped over," (Doc. 58-8 at 3-4), which is irrelevant since she did not trip over anything but rather lost her balance when she stepped into the depression. The third said only that he would not expect an inspector to report the area as an unsafe condition because such flaws are common, (Doc. 58-5 at 7), without stating he did not consider the area to be hazardous. This flimsy showing is patently inadequate to negate the existence of a hazardous condition. Even were it otherwise, the plaintiffs offer the testimony of the store manager that "any" uneven surface represents a potential

---

[5] (Doc. 58-10 at 3; Doc. 58-12 at 3).

trip hazard, (Doc. 60 at 11-12; Doc. 60-6 at 6-7), and the defendants do not deny that this evidence is sufficient to create a genuine issue of fact.

The defendants next assert that "no one has ever fallen or complained about the area." (Doc. 61 at 9).[6] The testimony of the store manager, however, which is all they offer, does not support the proposition. He did not testify that no one has ever fallen or complained but only that he has not "heard" of anyone, prior to the plaintiff, falling or complaining. (Doc. 58-8 at 4-5). Because he did not testify that he necessarily would have been made aware of any such incidents or complaints (or even that he was employed at the store prior to the plaintiff's incident so as to be in a position to receive such reports), his testimony fails to negate the existence of other incidents or complaints and thus cannot negate a defect.

Finally, the defendants argue that neither Brixmor nor the parking lot contractor ever reported the condition as hazardous. (Doc. 61 at 9).[7] They say that Brixmor inspected the parking lot at least monthly and did not cite the area of the plaintiff's fall as hazardous or unsafe; the deposition excerpts on which they rely, however, do not address inspections or citations at all. (Doc. 58-10 at 3-4). The contractor (who was required to report any unsafe conditions) may not have reported the area at issue to Brixmor,[8] but the reason for any such failure would be that "we just see so much of it [uneven pavement]," (Doc. 58-11 at 6-7), not that

---

[6] The absence of previous injuries constitutes evidence that a condition is not defective or unreasonably dangerous. *Miller*, 84 So. 3d at 94 & n.3.

[7] The defendants identify no Alabama case that has ever relied on such a circumstance in considering whether a defect exists, and the only case they do offer – an unpublished opinion from a sister federal court – neither cited precedent nor offered explanation for considering such evidence. It may be questioned whether a defendant's self-interested failure to identify a condition as defective or hazardous ought to be capable of negating a defect, but the Court assumes for present purposes that it is.

[8] The contractor was asked the question but did not answer it. (Doc. 58-11 at 4-5).

uneven pavement is non-hazardous. Even could this testimony negate a defect, the store manager's testimony that every uneven surface represents a potential trip hazard would, as discussed above, create a genuine issue of fact.

In summary, the defendants' only timely argument against the existence of a defect is both legally and factually deficient. Their untimely argument is rejected on that ground but would also be rejected on its merits.

### B.  Comparative Knowledge.

"The duty to keep an area safe for invitees is limited to hidden defects which are not known to the invitee and would not be discovered by him in the exercise of ordinary care. …. The entire basis of an invitor's liability rests upon his superior knowledge of the danger that causes the invitee's injuries. If that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable." *Daniels v. Wiley*, 314 So. 3d 1213, 1223 (Ala. 2020) (emphasis and internal quotes omitted). Thus, "openness and obviousness of a hazard, if established, negate the … invitor's duty to eliminate the hazard or warn the … invitee of the hazard …." *Id*. (internal quotes omitted); *accord McClurg v. Birmingham Realty Co*., 300 So. 3d 1115, 1118 (Ala. 2020) ("The owner's duty to make safe or warn is obviated, however, where the danger is open and obvious ….").

"A condition is open and obvious when it is known to the plaintiff or should have been observed by the plaintiff in the exercise of reasonable care." *Daniels*, 314 So. 3d at 1225 (internal quotes omitted); *accord McClurg*, 300 So. 3d at 1118 ("The owner's duty to make safe or warn is obviated, however, where the danger is open and obvious – that is, where the invitee should be aware of the danger in the exercise of reasonable care on the invitee's part.") (internal quotes omitted). The defendants argue they lack the superior knowledge that is a predicate to any duty to the plaintiff because the uneven pavement where the

plaintiff fell was "an obvious condition that [the plaintiff] should have observed in the exercise of reasonable care." (Doc. 58 at 15).[9]

To support their argument, the defendants present the following: the plaintiff and her husband had visited the store "hundreds" of times previously; they were aware that the parking lot was "cracked and uneven" to the point of needing resurfacing; on their way into the store an hour before her fall, the plaintiff and her husband had traversed the exact area of her fall; and the plaintiff when she fell was looking to her right, at her husband, rather than in front of her. (Doc. 58 at 14-15).

Before proceeding, some corrections must be made to the defendants' statement of the evidence. The plaintiff testified that she had been to this store "fifty or more" times, not hundreds. (Doc. 58-2 at 3). Her husband did not testify that they had been to the store hundreds of times but only that it "possibly" had been that many. (Doc. 58-3 at 4). Both the plaintiff and her husband acknowledged being aware of "cracks" in the parking lot pavement, but neither said anything about it being "uneven." (Doc. 58-2 at 4; Doc. 58-3 at 5-6). And at the moment she fell, the plaintiff testified she was watching both her husband and "the cars." (Doc. 58-2 at 15).

As the plaintiff appropriately points out, (Doc. 60 at 14-15), the defendants have promoted the testimony of multiple defense witnesses that they could see no unevenness in the pavement or any danger from its condition – even though they had the luxury of time and hindsight and were specifically looking for it. The defendants' own evidence thus indicates the danger was not open and obvious so as to eliminate their duty to remedy or warn.

Nor does the case on which the defendants primarily rely support their position. In *Sheikh v. Lakeshore Foundation*, 64 So. 3d 1055 (Ala. Civ. App.

---

[9] The defendants insist their "superior knowledge" argument is separate from "open and obvious" principles. (Doc. 61 at 10-11). In light of *Daniels* and *McClurg*, the Court cannot agree.

2010), the Court upheld a trial court ruling that certain cables over which the plaintiff tripped were open and obvious as a matter of law, negating a duty to warn. *Id*. at 1056, 1062. Photos showed that "the color of the cables contrasts distinctively with the color of the underlying carpet," *id*. at 1060, making the case analogous to *Paige v. Wal-Mart Stores, Inc.*, 638 So. 2d 4 (Ala. Civ. App. 1994), in which it was held that "the presence of an orange cord on an off-white colored floor established the existence of a condition that was 'open and obvious' as a matter of law." 64 So. 3d at 1061. Here, the photographic evidence is that there was no or minimal color contrast between the parking lot pavement and the depression in which the plaintiff lost her balance. (Doc. 58-4).

*McClurg*, on which the plaintiff principally relies, is especially instructive, because it involved a hole in a parking lot. 300 So. 3d at 1117. According to the Alabama Supreme Court, open-and-obvious issues are for the jury except in three categories of cases: (1) where the plaintiff "has admitted carelessness or subjective knowledge of the condition"; (2) where "the type of condition was so obviously dangerous as to preclude liability under any circumstances"; and (3) where, "under the particular circumstances, no reasonable jury could find that the danger was not open and obvious." *Id*. at 1119.

The second *McClurg* exception does not apply here, because "holes in parking-lot asphalt are not so categorically obvious that the situation merits a per se defense." 300 So. 3d at 1119. The third exception did not apply in *McClurg*, and does not apply here, because in both cases, "the position and dimensions of the hole, the fact that the hole was of the same color and material as the surrounding asphalt, and the fact that the hole was unmarked" would support a finding that the hole was not an open and obvious danger. *Id*. at 1120.[10] That the

---

[10] The hole in *McClurg* was shorter (16 inches) than in this case, a bit wider (four to five inches), and substantially deeper (4.5 inches). 300 So. 3d at 1117. As in this case, the hole in *McClurg* was positioned "where the asphalt met the curb." *Id*.

11

plaintiff was not looking in front of her when she fell cannot change the result, since that was also true in *McClurg*.[11]  Indeed, "[a] reasonable jury could conclude that people exercising reasonable care while walking in a parking lot are normally watching for other hazards, such as cars, other pedestrians, and stray shopping carts, and may not necessarily notice a pothole in the asphalt."  *McClurg*, 300 So. 3d at 1119-20.

      The only arguable difference between this case and *McClurg* is the plaintiff's familiarity with the parking lot.  While *McClurg* is silent on this point, the defendants have presented uncontroverted evidence that the plaintiff had used the parking lot at least several dozen times and was aware that it was cracked in various places to the extent it needed resurfacing.  The defendants, however, have identified no evidence that any cracks were wide enough to present a trip hazard, no evidence that any cracks created an uneven surface, and no evidence that the parking lot contained any other holes or gaps like the one involved in the plaintiff's fall.  The point of the defendants' limited presentation is thus unclear.  To the uncertain extent they suggest that a gap or depression on the edge of the parking lot was open and obvious as a matter of law simply because the plaintiff knew the parking lot had cracks (not holes) in other places, the Court rejects the suggestion as unsupported by any reasoned argument or citation to relevant authority.

      The defendants also have presented evidence that, an hour before her fall, the plaintiff had passed the area where she fell.  Since, however, they have identified no evidence that she ever passed the area of her fall on any other occasion, their assertion that she "had many opportunities to discover" the defect, (Doc. 58 at 15), cannot be credited.  Nor have the defendants offered any authority for the proposition that the plaintiff's walking past the area where she later fell does, or even could, establish an open and obvious condition as a matter of law.

---

[11] The plaintiff in *McClurg* stepped backwards into the hole.  300 So. 3d at 1117.

It is unnecessary to decide whether the defendants' evidence tends to suggest the existence of an open and obvious condition obviating a duty to remedy or warn.  It is sufficient to rule, as the Court does, that the defendants' evidence does not establish "some extraordinary circumstance or behavior by the plaintiff elevat[ing] the obviousness of the danger to the point that the plaintiff could not conceivably prevail on the claim," *McClurg*, 300 So. 3d at 1120, especially in light of (as in *McClurg*) the size and position of the hole, its lack of color contrast, and its unmarked nature.

The defendants again use their reply brief to raise arguments they omitted from their principal brief.  (Doc. 61 at 11-13).  The Court again declines to entertain these arguments on their merits and rejects them as untimely.  Again, however, the defendants' tardy arguments would fail even had they been timely presented.

First, the defendants suggest the plaintiff has "admi[tted] that she knew about the alleged defect." (Doc. 61 at 11).  Such actual knowledge would negate any duty on the defendants to remedy or warn, *Daniels*, 314 So. 3d at 1223, but they identify no evidence of such an admission.  Instead, the defendants rely on their evidence of the plaintiff's familiarity with the parking lot, which plainly contains no admission of knowledge of the uneven area prior to her fall.

Second, the defendants invoke the first *McClurg* category of cases supporting an open-and-obvious defense as a matter of law.  They say the plaintiff has effectively "admitted carelessness" by admitting she was not looking where she was going even though she was aware that the parking lot had cracks and uneven surfaces.  (Doc. 61 at 10 n.1).  As noted above, the defendants have identified no evidence that the cracks presented a hazard to pedestrians, no evidence that the parking lot had uneven surfaces anywhere other than the area where the plaintiff fell, and no evidence the plaintiff was aware of any such uneven surfaces.  The plaintiff did testify she was looking to her right – at her husband and at cars in the parking lot – at the moment she fell, but she did not

13

testify that she had done so other than in the fleeting way a prudent pedestrian would in navigating a busy parking lot filled with moving and suddenly appearing dangers. As noted above, "[a] reasonable jury could conclude that people exercising reasonable care while walking in a parking lot are normally watching for other hazards, such as cars, other pedestrians, and stray shopping carts, and may not necessarily notice a pothole in the asphalt." *McClurg*, 300 So. 3d at 1119-20.

The defendants say this case is just like *Browder v. Food Giant, Inc.*, 854 So. 2d 594 (Ala. Civ. App. 2002), the case from which the *McClurg* Court derived its first category. (Doc. 61 at 10 n.1, 12-13). Plainly it is not. The area in which the *Browder* plaintiff fell was red-dirt in color, in contrast to the asphalt from which she approached it. 854 So. 2d at 597. More importantly, the *Browder* plaintiff testified that she "does not normally look in front of her while walking" and that her husband scolds her for always walking without looking where she is going. *Id*. at 596. As noted above, there is no evidence the plaintiff here was inattentive to her path as opposed to alternating her vision between her path and the mobile dangers around her.

Finally, the defendants argue the plaintiff "has not established that Defendants had any knowledge, much less superior knowledge, of any alleged defect." (Doc. 61 at 11). As movant, the initial burden is on the defendants to negate such knowledge, and they have failed to do so. They say that no employee of either defendant ever observed the condition at issue, but they offer no evidence at all regarding Brixmor, and the two Sam's Club witnesses say only that, after the incident, they personally did not see anything that would have caused the plaintiff's fall. (Doc. 58-8 at 3-4, 6-7; Doc. 58-12 at 3). Such limited testimony cannot possibly negate an entire entity's awareness of the condition, especially when the defendants acknowledge that Brixmor "inspects the parking lot on at least a monthly basis." (Doc. 61 at 9). Because the defendants have not carried

14

their initial burden, no burden passes to the plaintiff to present affirmative evidence that the defendants knew of the uneven pavement.

In summary, the defendants' timely argument against the existence of their superior knowledge fails on the merits. Their untimely arguments are rejected on that ground but would also be rejected on their merits.

### C. Contributory Negligence.

"[T]he three elements essential to contributory negligence are [that the plaintiff] (1) had knowledge of the condition or failure (2) appreciated the danger and (3) failed to exercise reasonable care in the premises, but with such knowledge and appreciation, put himself in the way of danger." *Wallace v. Alabama Power Co.*, 497 So. 2d 450, 457 (Ala. 1986) (internal quotes omitted); *accord City of Lanett v. Tomlinson*, 659 So. 2d 68, 71 (Ala. 1995). The defendants, who bear the burden of proving this affirmative defense, *id.*, argue they have established contributory negligence as a matter of law. (Doc. 58 at 16-18).

The defendants must first demonstrate that the plaintiff "had knowledge" of the dangerous condition. *Wallace*, 497 So. 2d at 457; *see, e.g., Duffy v. Bel Air Corp.*, 481 So. 2d 872, 874-75 (Ala. 1985) (summary judgment based on contributory negligence was appropriate where the plaintiff saw the gravel on which she slipped before she walked on it); *see also Newton v. Creative Dining Food Systems, Inc.*, 492 So. 2d 1011, 1012 (Ala. 1986) (explaining *Duffy*). The condition at issue here is the uneven pavement where the plaintiff fell. The defendants, however, present no evidence that the plaintiff knew this gap in the pavement existed prior to her fall, and her testimony that she did not know of it until she fell, (Doc. 60-2 at 4), would in any event create a fact issue as to the first element of the defense.

Rather than attempt to show the plaintiff's actual knowledge of the gap, the defendants repeat their assertion that the plaintiff "knew the subject parking lot was cracked and uneven." (Doc. 58 at 17). As addressed in Part B, the

15

defendants have identified no evidence that the parking lot was uneven other than the spot the plaintiff fell.  Even had they done so, however, they have offered no evidence that the plaintiff knew the particular area where she fell was uneven, and they cite no law for the proposition that, for purposes of a contributory negligence defense, a plaintiff can be charged with knowledge of a condition of which she was actually ignorant simply because she was aware of a similar condition in a different location.

The defendants next seek to avoid the first element by reformulating the second.  In order to establish the second element of contributory negligence on motion for summary judgment, a defendant must show "that the plaintiff had a conscious appreciation of the danger at the moment the incident occurred." *Daniels*, 314 So. 3d at 1224 (internal quotes omitted).[12]  According to the defendants, the plaintiff could have such an appreciation even if she was unaware of the pavement gap before she fell; all that is required, they say, is a general awareness "of any risks associated with walking in a parking lot," including the cracks she had observed elsewhere in this particular parking lot. (Doc. 58 at 17-18; Doc. 61 at 14).  That is, the defendants would have it that a plaintiff need not appreciate the dangerousness of a known condition but need only appreciate that she may encounter unknown dangerous conditions.  The defendants offer no legal authority supporting their argument, which contradicts *Wallace* and many other cases identifying knowledge of the condition as a separate, essential element of a contributory negligence defense.[13]

In summary, the defendants have not met their burden of showing the absence of a genuine issue of fact as to the plaintiff's knowledge of the uneven

---

[12] This is a deliberately higher standard than applies at trial.  *Id*.

[13] *E.g., Imperial Aluminum-Scottsboro, LLC v. Taylor*, 295 So. 3d 51, 62 (Ala. 2019); *Campbell v. Kennedy*, 275 So. 3d 507, 510-11 (Ala. 2018); *Mitchell's Contracting Service, LLC v. Gleason*, 261 So. 3d 1153, 1161 (Ala. 2017); *Hilyer v. Fortier*, 227 So. 3d 13, 23 (Ala. 2017).

pavement, and they therefore have not established contributory negligence as a matter of law.

### D. Assumption of the Risk.

"The affirmative defense of assumption of the risk requires that the defendant prove (1) that the plaintiff had knowledge of, and an appreciation of, the danger the plaintiff faced; and (2) that the plaintiff voluntarily consented to bear the risk posed by that danger." *Ex parte Potmesil*, 785 So. 2d 340, 343 (Ala. 2000). The defendants argue they have established assumption of the risk as a matter of law. (Doc. 58 at 18-21).

To show knowledge and appreciation of the danger the plaintiff faced, the defendants again assert the plaintiff's "familiar[ity] with general risks associated with parking lots, including cracks and uneven surfaces," bolstered by her awareness of cracks in other areas of the instant parking lot. (Doc. 58 at 19-20). That is, the defendants again deny that the relevant "danger" the plaintiff must know of and appreciate is the condition the plaintiff encountered (*i.e.*, the actual uneven surface that caused her to fall); instead, they posit that the relevant danger includes the universe of conditions she might possibly encounter but of whose actual existence along her path she is ignorant. Again, they identify no legal support for their position. While that omission is sufficient to require the argument's rejection, the Court pauses to explain why it is improbable.

The relevant danger is the danger the plaintiff "faced." The verb has many meanings, but the most appropriate for the context in which *Potmesil* used it is "to meet or confront." American Heritage Dictionary 631 (5th ed. 2011). Plaintiffs cannot "meet or confront" hypothetical dangers but only actual, existing ones. In this case, the plaintiff could (and did) meet or confront an actual uneven surface, but she could not meet or confront a merely hypothetical uneven surface. To have knowledge of the danger the plaintiff faced, therefore, is to have knowledge of the dangerous condition by which the plaintiff was injured.

17

This straightforward construction is consistent with the formulation of the elements of assumption of the risk found in *Sprouse v. Belcher Oil Co.*, 577 So. 2d 443 (Ala. 1991). "Assumption of risk has three elements: (1) knowledge by the plaintiff *of the condition*; (2) appreciation by the plaintiff of the danger or risk posed by that condition; and (3) a voluntary, affirmative exposure to the danger or risk." *Id*. at 444 (emphasis added); *accord Mitchell v. Torrence Cablevision USA, Inc.*, 806 So. 2d 1254, 1257 (Ala. Civ. App. 2000); *Grider v. McKenzie*, 659 So. 2d 612, 617 (Ala. Civ. App. 1994). This is the basic formulation used in an Alabama pattern jury charge on assumption of the risk. *Lyons v. Walker Regional Medical Center, Inc.*, 868 So. 2d 1071, 1083 n.2 (Ala. 2003).

The defendants do identify one existing condition of which the plaintiff was aware: the plaintiff was wearing shoes with a wedge heel of over two inches. (Doc. 58 at 20; Doc. 58-2 at 16-17; Doc. 58-6). The condition that caused the plaintiff to fall, however, was not simply her footwear but a gap in the pavement, of which she says she was not aware. The plaintiff's shoes therefore do not advance the defendants' position regarding the plaintiff's knowledge of the dangerous condition she encountered.

Even had the defendants met their burden of satisfying the initial element of their defense as a matter of law, they have not met their burden regarding the second. The plaintiff must "conscious[ly] appreciate[e]" the danger, *H.R.H. Metals, Inc. v. Miller ex rel. Miller*, 833 So. 2d 18, 27 (Ala. 2002), which conscious appreciation necessarily must exist when the plaintiff faces the danger. The defendants' evidence, however, does not address the plaintiff's appreciation at this critical point in time; instead, it addresses the plaintiff's appreciation of the risk of encountering unknown imperfections in a parking lot, and of wearing wedge heels in a parking lot, only as of the time of her deposition, which occurred over two years after the incident. (Doc. 58-2 at 2, 5, 17).

In summary, the defendants have not met their burden of showing the absence of a genuine issue of fact as to the plaintiff's knowledge of, and

appreciation of, the danger she faced, and they therefore have not established assumption of the risk as a matter of law.

## II. Wantonness.

The plaintiff concedes that her claim for wantonness is due to be dismissed. (Doc. 60 at 2 n.2).

## CONCLUSION

For the reasons set forth above, the defendants' motion for summary judgment is **granted** with respect to Count Two, and with respect to Count Three to the extent it is based on a theory of wantonness. In all other respects, the defendants' motion is **denied**.

DONE and ORDERED this 9th day of September, 2021.

> s/ WILLIAM H. STEELE
> UNITED STATES DISTRICT JUDGE